UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


EL PASO E&P CO., LP                        CIVIL ACTION NO. 07-0428

VERSUS                                     JUDGE WALTER

CRABAPPLE PROPERTIES,                      MAGISTRATE JUDGE HORNSBY
LTD, ET AL


## REPORT AND RECOMMENDATION

**Introduction**

El Paso E&P Company, LP ("El Paso") is the lessee under a mineral lease that embraces over 1,000 acres in Bienville Parish.  Competing leaseholders made demand on El Paso for recognition of their leases.  El Paso filed this declaratory judgment action, based on an assertion of diversity jurisdiction.  The named defendants include the competing leaseholders and the landowners who granted the leases, all of whom are alleged to be diverse in citizenship from El Paso.

Before the court is a Motion to Dismiss (Doc. 32).  Defendants argue that (1) El Paso's complaint fails to state a claim upon which relief may be granted and (2) several other persons who have ownership interests in the properties at issue should be joined as defendants.  At least one of the proposed new defendants shares Texas citizenship with El Paso, which means this court would have to dismiss this civil action for lack of subject matter jurisdiction if it finds that the other persons are indispensable parties.

**Relevant Facts**

Defendants' Rule 12(b)(6) challenge must be determined based solely on the facts asserted in the complaint and the exhibits to the complaint.  Ferrer v. Chevron Corp., 484 F.3d 776, 780 (5th Cir. 2007).  El Paso filed a First Amended Complaint (Doc. 27) that restated its allegations, so it is that pleading which is the focus of the Rule 12(b)(6) challenge.  The First Amended Complaint makes reference to a demand letter and a response to the letter that are said to be attached as Exhibits A and B.  It appears the exhibits were not attached to the amended pleading, but they were attached to the original complaint, and the court will consider them in connection with this motion.

With respect to the Rule 12(b)(7) motion based on lack of an indispensable party, the court may consider affidavits and other competent evidence.  Estes v. Shell Oil Co., 234 F.2d 847, 849 n.5 (5th Cir. 1956).  Copies of an act of sale, mineral leases, maps and other documents have been filed. Fortunately, there are no significant factual disputes with respect to the matters presented in connection with the motion.  The parties disagree only on the law and how it should apply to those facts. A summary of the facts and some background discussion of Louisiana mineral law are set forth below.

The Pardee Company once owned 8,673 acres of non-contiguous tracts of land in Bienville Parish.  The Pardee Company sold the land to Willamette Industries, Inc. in 1971, but the Pardee Company reserved all of its rights in the minerals underlying the land.  That

reservation created a mineral servitude belonging to the Pardee Company.[1]  That servitude, under Louisiana law, reserved to the Pardee Company the right to explore for and produce minerals from the land. La.R.S. 31:21. A mineral servitude will, under Louisiana law, prescribe and terminate if not used within 10 years. La.R.S. 31:16.  That prescription of non-use may be interrupted by good-faith operations for the discovery and production of minerals. La.R.S. 31:29. If the servitude expires, the mineral interests return to the owner of the land. See Petro-Hunt, L.L.C. v. U.S., 365 F.3d 385, 388 (5th Cir. 2004) (summarizing Louisiana mineral servitude law).

The Pardee Company transferred its servitude and, after various transfers and mergers, Pardee Minerals, LLC became the owner of the servitude. In 2001, a Pardee company that was then the owner of the mineral servitude granted to Carnes Oil Corporation a mineral lease that embraced approximately 1,160 acres of the land subject to Pardee's mineral servitude (which embraced a total of 8,673 acres).  Carnes, by various assignments, assigned all of its rights in the lease to El Paso, reserving to Carnes an overriding royalty interest.  This lease will be referred to herein as the "El Paso lease," and the mineral servitude on which it rests and depends shall be referred to as the "Pardee Servitude."

Willamette, the owner of the land burdened by the Pardee Servitude, over time sold parcels of the property to various persons. Martin Timber Company, LLC eventually came

---

[1] It may have actually created more than one servitude. "A single mineral servitude may not be created on two or more noncontiguous tracts of land." La.R.S. 31:73.

to own some of the property that was within the scope of the Pardee Servitude. In 2006, Martin transferred any rights it had in minerals underlying the property to ROM Minerals and Development Co., LLC, which later came to be known as Indigo Minerals, LLC ("Indigo"). It is not entirely clear from the briefs whether the property affected by the Indigo instrument is also within the scope of the El Paso Lease.

The transfer to Indigo appears to be in the nature of what is often called a "top lease," or in this case a "top servitude," meaning that the new lease or servitude is subject to a superior claim to the minerals and will not be effective until the expiration of the pre-existing lease or servitude. The mineral deed in favor of ROM/Indigo acknowledges the existence of an existing mineral servitude burdening the land and states that the servitude granted to ROM/Indigo will not be vested until termination of the existing servitude. See Doc. 10, Exhibit E.

Several "surface owners" of land within the boundaries of the Pardee Servitude and the El Paso Lease granted approximately 19 mineral leases to Crabapple Properties, Ltd. John Fetzer, Jr., who is associated with Crabapple, is also a lessee under one such lease. These leases appear to be in the nature of top leases, in that their effectiveness is dependent upon the expiration of the pre-existing Pardee Servitude that has a superior right to explore for and produce minerals from the same land.

Crabapple and Fetzer made written demand upon El Paso in January 2007 that El Paso begin immediately recognizing the Crabapple and Fetzer leases.  The demand letter, attached

to the original complaint as Exhibit A, asserted that the Pardee Servitude had prescribed and was terminated due to non-use for over 10 years.  The letter recounted how, after the servitude was created in 1971, prescription was "apparently interrupted" by the drilling of two wells that were both eventually plugged and abandoned.  As the servitude was about to prescribe, Pardee entered into a lease with Famcor Oil, Inc. that required Famcor to drill a well to 8,500 feet by December 31, 1998.  The Office of Conservation issued a permit for the well to a depth of 9,950 feet.  The Famcor well, however, was drilled to only 3,586 feet, abandoned and plugged.  Crabapple argued in its demand letter that the Famcor well was not a good-faith attempt to exploit minerals so it did not interrupt prescription on the Pardee Servitude, which Crabapple contended was then terminated by non-use.  El Paso responded that the Famcor operation was adequate under Louisiana law to interrupt prescription on the Pardee Servitude and, thus, the El Paso lease continued in effect.

El Paso filed this declaratory judgment action against Crabapple, Mr. Fetzer and the approximately 20 individuals or married couples who are surface owners of land within the scope of the El Paso Lease and who granted mineral leases to Crabapple and Mr. Fetzer.  A map attached as an exhibit to a prior motion (Doc. 10, Exhibit A-1) depicts the land subject to the El Paso lease, with the portions of the land which the named defendants own or have an interest in shaded in purple.  The map suggests that the named defendants own less than five percent of the land affected by the El Paso lease.

El Paso's complaint seeks a variety of forms of relief.  El Paso asks for a declaration that Famcor's drilling constituted good-faith operations such that prescription against the Pardee Servitude was interrupted "with respect to the acreage covered by the [El Paso] Lease that is contiguous to the property upon which the Pardee No. 1 well was drilled."  El Paso seeks, with respect to that same acreage, a declaration that the Pardee Servitude "is in full force and effect and that the Lease is likewise in full force and effect."  El Paso asks the court to declare that El Paso "has no contractual, statutory and legal obligations" to the named defendants with respect to its operations conducted on the Pardee Servitude, including payment of royalties or other production payments.  Amended Complaint, ¶¶ 45-50.

El Paso asks that if it is determined that it owes sums to any defendant, that the court calculate the amounts owed as part of an accounting rendered in this action, declare that interest on the sums does not accrue until the amounts are finally determined, and declare that the defendants are not entitled to any penalties, attorney fees or other extraordinary relief. ¶¶ 51-56. Pardee Minerals, LLC, the current owner of the Pardee Servitude, has intervened as a plaintiff in this case and joins El Paso's request that the court declare its servitude continues in effect. Complaint In Intervention, Doc. 12.

**Rule 12(b)(6) Challenge**

A defendant may challenge a complaint by filing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In assessing the motion, the court must accept as true all well-pleaded facts in the complaint and view those facts in the light most favorable

to the plaintiff. <u>In re Katrina Canal Breaches Litigation</u>, 495 F.3d 191, 205 (5th Cir. 2007). "To survive a  Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" <u>Cuvillier v. Taylor</u>, 503 F.3d 397, 401 (5th Cir. 2007), quoting <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007).

Defendants observe that El Paso's amended complaint recognizes that the Pardee Servitude was created in 1971.  Defendants fault the amended complaint for including only one affirmative allegation of an instance, the 1998 Famcor well, where operations were conducted that might halt the running of the 10-year prescription of non-use.  Defendants concede that El Paso does allege that some unspecified pre-1998 drilling operations occurred, but Defendants fault El Paso for not alleging in their amended complaint the dates of those operations, the manner in which the operations were conducted, the identity of the persons who conducted the operations, and similar details.

El Paso need not allege in its amended complaint every fact that it might need to prove to prevail on the merits.  "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief" along with a statement of jurisdiction and a demand for the relief sought.  Fed. R. Civ. Pro. 8(a).  This simplified notice pleading standard need only give a defendant fair notice of what the plaintiff's claim is and the grounds upon which rests.  The liberal discovery rules and

summary judgment motions are then employed to explore the details of the claim. Swierkiewicz v. Sorema NA, 122 S.Ct. 992, 998 (2002) (reversing dismissal of employment discrimination complaint that did not contain all specific facts to establish a prima facie case; only a short and plain statement was required).  A plaintiff need not address every element of his claim, and even allegations that could be characterized as conclusional will not, alone suffice to make them insufficient.  General Electric Capital Corp. v. Posey, 415 F.3d 391, n.5 and n.6 (5th Cir. 2005).

El Paso's amended complaint easily satisfies the notice standard and assert a claim for relief that, as required by Twombly, rises above the speculative level.  The pleading itself alleges that prior to the drilling of the Famcor well "other wells had been drilled on the servitude tract so that at the time of the drilling of [that well], the Pardee mineral servitude was in full force and effect."  Amended Complaint, ¶ 43.  The demand letter, and response thereto, which are attached to the original complaint, contain additional information about those other drilling efforts, and most of the information comes from the letter penned by counsel for Defendants.  Those letters are deemed part of the complaint for purposes of a Rule 12(b)(6) challenge.  Ferrer, 484 F.3d at 780.  More than adequate notice was provided by the amended complaint, and Defendants will have to rely on discovery and motion practice to explore the factual details of El Paso's claims.

The Defendants also attack El Paso's request for a declaration that El Paso owes Defendants no "contractual, statutory and legal obligations" and the request that the court

adjudicate the scope of any obligations that El Paso owes Defendants under its lease. Defendants argue that the first form of relief requested is defeated by the admission of the existence of a mineral lease that creates various obligations, and Defendants attack the "scope of the obligations" declaration request based on El Paso not attaching a copy of the lease or alleging sufficient facts about its terms and conditions.  Discovery can easily provide Defendants a copy of the El Paso Lease if they do not already have one. With respect to the precise extent of relief that the court may afford, it is not necessary to decide such issues at this preliminary pleadings-review stage of the case.  Such matters are typically not capable of resolution until the end of the litigation.  It is sufficient for current purposes to determine that El Paso has stated a claim upon which relief may be granted.  The precise remedies that may be granted await resolution through more substantive means.

**Rule 12(b)(7) Challenge**

Defendants move to dismiss El Paso's lawsuit for failure to join all persons who have a cognizable ownership interest in the immovable property subject to the Pardee Servitude, and all mineral lessees and royalty owners who have an interest derived from the landowners or the owner of the Pardee Servitude. Neither the identity nor even the number of such potential parties is stated in the record, but Defendants do represent that Indigo Minerals, LLC ("Indigo") is one of the interest holders that Defendants assert should be joined.  Indigo shares Texas citizenship with El Paso, so its joinder would destroy diversity jurisdiction and require dismissal.

Rule 12(b)(7) allows dismissal "for failure to join a party under Rule 19."  Rule 19

provides for the joinder of all parties whose presence in a lawsuit is required for the fair and

complete resolution of the dispute at issue.  It also provides for the dismissal of the suit if it

should not proceed without the parties who cannot be joined.  HS Resources, Inc. v. Wingate,

327 F.3d 432, 438 (5th Cir. 2003).

The relevant text of Rule 19 provides:

**(a) Persons Required to Be Joined if Feasible**

**(1) Required Party.** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(I) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

**(2) Joinder by Court Order.** If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

\*\*\*

**(b) When Joinder Is Not Feasible**. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and

good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

The Rule 19 analysis requires the court to first determine under Rule 19(a) whether a person should be joined to the suit.  If the person should be joined, but his joinder would destroy jurisdiction, then the court must determine under Rule 19(b) whether to press forward without the person or to dismiss the suit.  HS Resources, Inc., 327 F.3d at 439.

Defendants cite a number of cases that they contend were decided in similar circumstances and counsel joinder/dismissal.  El Paso attempts to distinguish those cases. The court has reviewed the cited decisions, as well as some others, and summarizes a few of them below to demonstrate how Rule 19 has been applied in cases involving claims that affected rights in immovable property, although none of the cases arose in precisely the same circumstances as presented in this case.

Royalty owners were held to be indispensable to claims that attacked title to the land from which their rights derived in Tardan v. California Oil Co., 323 F.2d 717 (5th Cir. 1963). The Dulac company was the record owner of the property, and it had granted a mineral lease to California Oil Company.  Several persons filed suit against Dulac and California Oil based on a claim that they held title to the property via a patent issued by the state to one of their ancestors.  After the suit was filed, it was determined that a large number of persons claimed royalty interests under the lease from Dulac to California Oil.  The Fifth Circuit stated:

> The royalty claimants ought to be brought in as parties ... . The royalty claimants are indispensable to any action which involves title to lands or any interest therein, as the royalty claimants have an interest in sustaining the title of Dulac, through whom the leases to California derive, which is the support of their claim to royalty payments.  Any decree which destroys or adversely affects Dulac's title will necessarily affect their claims to Royalty.

Tardan, 323 F.2d at 723. The same result was reached in Hilton v. Atlantic Refining Co., 327 F.2d 217 (5th Cir. 1964) when the court held that royalty owners were indispensable parties in a suit that could result in termination of the lease on which they based their claims.

Defendants emphasize the decision in Schutten v. Shell Oil Company, 421 F.2d 869 (5th Cir. 1970).  A levee district, as owner of certain land, granted a mineral lease to Shell Oil.  The Schuttens, who claimed ownership of the land, filed suit against Shell Oil to evict it and for an accounting for the removal of minerals from the land.  Shell filed a motion to dismiss on the grounds that the levee district, which claimed title to the land at issue, was an indispensable party.  The Fifth Circuit agreed.  It observed that the question of actual

ownership must necessarily be adjudicated before the trespass and accounting issues could be reached. Although the levee district, who also claimed ownership, would not be bound by the judgment in the res judicata sense or be precluded from filing its own suit, the levee district would be nonetheless prejudiced within the meaning of Rule 19.  Other factors, including the avoidance of multiple litigation of essentially the same issues and avoiding inconsistent obligations for Shell Oil, caused the Fifth Circuit to hold that the case could not proceed without the joinder of the levee district.

Another case cited in the briefs is <u>Doty v. St. Mary Parish Land Company</u>, 598 F.2d 885 (5th Cir. 1979). Mrs. Doty and others filed suit against St. Mary Parish Land Company seeking to be declared owners of two tracts of land to which the Land Company also claimed title.  The Land Company filed a motion to dismiss for failure to join as indispensable parties Atlantic Richfield, to whom it had granted a mineral lease, and 38 royalty owners.  The Fifth Circuit concluded that Rule 19 led "inescapably" to the conclusion that the case should not proceed in the absence of the mineral lessee.  It observed that the mineral lessee would be prejudiced, within the meaning of Rule 19, by a judgment that would create doubt as to the validity of its title, confusion about its rights with respect to the land, and a reduction in the economic value of its lease.  The judgment, although not binding in the res judicata sense if the mineral lessee were not joined, would nonetheless constitute precedent adverse to the lessee's claims.  The remaining factors also favored joinder, so the district court's decision to require joinder was affirmed.

Defendants also cite <u>Read v. Phillips Petroleum Company</u>, 441 F. Supp. 1184 (E.D. La. 1977), decided by Circuit Judge Rubin, sitting as district judge by designation.  Charles Read, together with eight brothers and sisters, sold their interest in a tract of land to Ms. Vezina, reserving to the Reads an interest in minerals developed from the tract.  Ms. Vezina later granted Phillips Petroleum a mineral lease on the property.  Phillips spudded a well on an adjacent tract that it also leased.  Charles Read filed suit against Ms. Vezina and Phillips for a declaration of his mineral rights under his contract of sale and under Ms. Vezina's lease to Phillips.  Ms. Vezina moved to dismiss for failure to join as plaintiffs Charles Read's eight brothers and sisters, each of whom claimed a similar mineral interest.   Judge Rubin determined that it was "clear that the plaintiff's brothers and sisters are persons who should be joined if feasible."  <u>Read</u>, 441 F. Supp. at 1186.  Their rights derived from the same contract of sale, and Charles Read's unsuccessful assertion of his rights "would not be binding on other family members, but could have at least precedential effect in a subsequent suit by his brothers and sisters," and if Charles Read lost the suit, the defendants would run the risk of facing multiple litigation, and perhaps inconsistent rulings if the brothers and sisters later filed their own suits.  <u>Id</u>.  Judge Rubin reviewed the other factors and determined that the suit had to be dismissed because the brothers and sisters who should be joined would destroy diversity jurisdiction.

A similar case was recently decided in this court.  The plaintiff in <u>Holland v. Questar Exploration</u>, 03-cv-2087 filed in state court a petition for cancellation of a mineral lease for

reasons including an alleged failure to timely commence drilling operations.  The case was removed based on an assertion of diversity jurisdiction.  The plaintiff moved to amend her complaint to add as defendants several working interest owners and royalty owners, some of whom were not diverse in citizenship.  The undersigned, citing <u>Hilton</u>, <u>Tardan</u> and other cases, determined that the proposed defendants would be adversely affected in a significant way if the lease were canceled, so the plaintiff should be permitted to amend and add them as defendants, even though it would destroy diversity and require a remand.  Judge Hicks affirmed that decision in <u>Holland v. Questar Exploration & Production Co</u>., 2006 WL 461127 (W.D. La. 2006).

El Paso argues that the other landowners within the scope of the Pardee Servitude and Indigo do not have the requisite "legal interest" in the outcome of this litigation to be considered indispensable parties.  El Paso characterizes the interests of those persons as merely similar and without a "direct stake" in this litigation.  El Paso also urges that the cases cited by Defendants, some of which were summarized above, are distinguished because no revenue stream or property right held by the absent parties will be canceled by a ruling in this case.  That is a difference between the cited cases and this case.

The Pardee Servitude that was reserved and created when The Pardee Company sold land to Willamette Industries, Inc. does not provide for a payment of royalties or other payments to Willamette. Pardee reserved 100% of the right to explore for and produce minerals from the land. <u>See</u> Cash Sale Deed at Doc. 10, Exhibit 2. The many landowners that

Defendants urge should be joined in this suit acquired their title, directly or indirectly, from or through Willamette, so they are subject to the same terms regarding the Pardee Servitude as were set forth in the Cash Sale Deed to Willamette that created the servitude.  Thus, there is no suggestion that the landowners would lose royalty payments or another income stream if this court were to declare the Pardee Servitude terminated by prescription of non-use.  The landowners would, rather, stand to gain from such a declaration because they would then regain the right to explore for and produce minerals (or grant leases regarding such rights) on the land they own. Conversely, if the court were to hold that the Pardee Servitude continues in effect, that would be an adverse precedent that would face the other landowners if any of them should later bring their own action in state or federal court to declare the Pardee Servitude terminated.

The central question in this lawsuit is whether the Pardee Servitude has prescribed by non-use.  That issue, as explained above, is of significant importance to the other landowners whose property is ostensibly subject to the servitude, which separates the landowners from any mineral rights associated with their property.  The first requirement of Rule 19(a)(1)(B) is that the absent person "claims an interest relating to the subject of the action ... ."  None of the absent landowners may be actively asserting a demand, but each of them, by virtue of ownership of the land and the value of regaining mineral interests, implicitly claims an interest relating to the subject of this action. The record does not indicate whether the absent landowners are aware of their potential claim that the servitude burdening their land has

prescribed and returned to the landowner all mineral rights. El Paso has not articulated any reason that a landowner who was aware of the claim would not support its assertion. None of the decisions, discussed above, from similar contests stated that the absent persons were actually or actively asserting demands. In fact, in <u>Read v. Phillips</u>, the evidence showed that the brothers and sisters who should be joined were deliberately abstaining from asserting claims, likely for tactical reasons, yet they were found to satisfy Rule 19. The undersigned concludes that the absent landowners claim an interest relating to the subject of the action.

The next requirement is that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest.  As noted above, cases such as <u>Schutten</u>, 421 F.2d at 874-75 recognize that a judgment may prejudice an absent party even though the party is not bound by the judgment in the res judicata sense. The Court rejected the "narrow and technical view" of prejudice that is similar to the position advocated by El Paso in this case.  <u>See also</u> <u>Doty</u>, 598 F.2d at 887 (adverse precedent, though not binding, can constitute prejudice).

The next requirement of Rule 19(a)(1)(B) is that adjudication without the absent person could leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the absent person's interest.  The parties advise that Indigo has already filed its own declaratory judgment action in state court, so there is currently a risk of inconsistent rulings regarding the continued validity of the Pardee Servitude and, therefore, the obligations of El Paso. Should both cases continue and

this court and the state court disagree, there would be not only a waste of judicial resources but tremendous unfairness to the parties of inconsistent rulings and horribly confused title status for a significant area of immovable property, which could easily result in even more litigation and legal expenses for those concerned.  There is no suggestion that the landowners subject to the Pardee Servitude or other claimants have threatened litigation,  but the sheer size of the tract at issue suggests that the economics involved give rise to substantial risk of more suits being filed that will, as this one, ask a court to decide whether the Pardee Servitude has prescribed.  El Paso may be willing to accept that risk, but it is nonetheless a consideration under Rule 19. If all of the concerned owners and claimants are joined in one suit, the issue can be resolved with certainty and finality.  The undersigned finds, after consideration of all the Rule 19(a)(1)(B) factors, that the absent landowners, Indigo and others who stand to gain from a declaration that the Pardee Servitude has terminated should be joined as defendants in this case.

Indigo is a limited liability company.  When an LLC is a party, citizenship is determined for diversity purposes by looking to the citizenship of the members of the entity. The Fifth Circuit has not addressed the issue, but the several other circuits to do so have all reached that conclusion.  See WW McC, LLC v. Hangar, Inc., 2007 WL 2693666 (W.D. La. 2007) (collecting cases).  Defendants represent that at least one member of Indigo, William

E. Pritchard, III, is a citizen of Texas.  Joining Indigo as a defendant would destroy diversity jurisdiction because El Paso is also a citizen of Texas.[2]

Rule 19(b) provides that when a person who is required to be joined cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or be dismissed.  The rule provides factors to be considered in making that decision.  The first factor is the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties.  As discussed above, the adverse precedent that might result from this case would prejudice absent persons, and if the federal decision conflicts with a state court decision rendered in Indigo's action, the confusion stemming from that conflict would be prejudicial to the parties and the absent landowners because of the uncertainty it would cause.

The court is next to consider the extent to which such prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures.  El Paso has not suggested any methods by which the prejudice could be lessened or avoided and, as the Doty Court noted, it is difficult to conceive of a method by which relief given in this case could be tailored to avoid the impact of adverse precedent on missing parties.

---

[2] El Paso is a limited partnership, so its citizenship is determined by looking to the citizenship of its partners.  Carden v. Arkoma Associates, 110 S.Ct. 1015 (1990). The Amended Complaint alleges that there are two partners in El Paso, and each is a corporation. Each corporation is incorporated in Delaware and has its principal places of business in Texas, making the corporations citizens of both Delaware and Texas. 28 U.S.C. § 1332(c)(1).

Finally, Rule 19(b) says the court should consider whether a judgment in the person's absence would be adequate, and whether El Paso would have an adequate remedy if the action were dismissed.  A judgment rendered without joinder of the absent parties would be arguably adequate because it would resolve the dispute between the current parties, but if this action were dismissed for non-joinder, El Paso could pursue that same remedy in state court where all interested parties could be joined.  A Louisiana court, with a strong interest in questions of title to land and minerals located in the state, could then adjudicate all the claims.  See Read, 441 F. Supp. at 1187-89 (discussing the adequacy of the remedy to be had in state court).

On balance, the factors for consideration under Rule 19(b) weigh in favor of not proceeding with only the existing parties.  Rather, this civil action should be dismissed without prejudice because non-diverse parties needed for its adjudication may not be joined in this federal diversity proceeding.

Accordingly;

**IT IS RECOMMENDED** that the Motion to Dismiss (Doc. 32) should be denied with respect to the Rule 12(b)(6) challenge, but granted with respect to the Rule 12(b)(7) challenge, resulting in dismissal without prejudice of this civil action.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 6th day of March, 2008.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE